## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOHN F. PALLADINO and ANTHONY      :
CATANOSO,                                  :       Hon. Joseph H. Rodriguez
                                            :
      *Plaintiffs*,                     :
                                            :
      v.                              :       Civil No. 22-6756
                                            :
GUY LEAVITT, SKYVIEWS OF            :
AMERICA, LLC, SKYVIEWS MIAMI,    :
LLC and JOHN DOES 1-10,         :       **OPINION**
                                            :
      *Defendants*.               :
                                            :
                                            :

Presently before the Court is the motion to dismiss for lack of personal jurisdiction and improper venue, or in the alternative, to transfer this action to the United States District Court for the Southern District of Florida filed by defendants Guy Leavitt ("Leavitt"), Skyviews of America, LLC ("SA") and Skyviews Miami, LLC ("SM") (Leavitt, SA and SM, collectively, the "Defendants") [Dkt. 17]. The Court is in receipt of the opposition filed by plaintiffs John F. Palladino ("Palladino") and Anthony Catanoso ("Palladino") (Palladino and Catanoso, together, the "Plaintiffs") [Dkt. 28] and Defendants' reply [Dkt. 35], as well as the parties' supplemental letter submissions [Dkt. 36, 37, 38, 39]. For the reasons set forth herein, the Court will deny Defendants' motion in its entirety.

## I.      Background

This case arises from the alleged breach of a contract under which Plaintiffs purportedly agreed to provide consulting services to Leavitt and his companies, SA and

1

SM, in furtherance of the development of a Skywheel observation wheel ("Skywheel") in Miami, Florida. Plaintiff John F. Palladino is an individual residing in Ventnor, New Jersey. Complaint ¶ 1 [Dkt. 1-1] ("Compl."). Plaintiff Anthony Catanoso is an individual residing in Cape May Court House, New Jersey. Compl. ¶ 2. Defendant Guy Leavitt is an individual domiciled in Arizona. MEMORANDUM OF LAW IN SUPOORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, TO TRANSFER VENUE at *2 [Dkt. 17-1] ("Br. in Supp."); Compl. ¶ 3. Defendant Skyviews of America, LLC is an Arizona limited liability company managed by Leavitt and his wife, Charlene Leavitt, that is, among other things, actually engaged in business in Miami, Florida. Br. in Supp. at *2; Compl. ¶ 4. Defendant Skyviews Miami, LLC is a Florida limited liability company, managed by Leavitt, and his wife, Charlene Leavitt, that is, among other things, actually engaged in business in Miami, Florida. Br. in Supp. at *3; Compl. ¶ 5.

Catanoso is one of the owners and operators of the business entities that operate the Steel Pier amusement complex in Atlantic City including The Wheel at Steel Pier, a 227-foot observation wheel. Compl. ¶ 7. Catanoso is a client of Palladino's law firm. Compl. ¶ 8. In or around 2016, Plaintiffs began exploring the idea of developing a "slingshot" style amusement in the Miami, Florida area. Compl. ¶ 9. However, when scouting locations in Miami, Plaintiffs came to realize that a large observation wheel ("Skywheel"), similar to the one located on Steel Pier, would potentially be more profitable. Compl. ¶ 10. Plaintiffs identified a site in Miami as a potentially suitable location for the development of the Skywheel. Compl. ¶ 11.

Catanoso then contacted James Riggs ("Riggs") concerning the potential development of the Skywheel. Compl. ¶ 12. Plaintiffs assert that Riggs is a business partner and agent of Leavitt who held himself out as a representative of Leavitt and the Skyview entities. Compl. ¶ 13; PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS at *1, 4-5 [Dkt. 28] ("Opp."). Catanoso and Riggs met at Catanoso's business, the Steel Pier in Atlantic City, to discuss the potential development and the assistance that Plaintiffs could provide to Riggs, Leavitt, and the Skyview entities. DECLARATION OF ANTHONY CATANOSO ¶ 2 [Dkt. 28-2] ("Catanoso Decl."). Plaintiffs understood that a Leavitt-controlled Skyview entity would ultimately develop the Skywheel. Catanoso Decl. ¶ 4. Ultimately, Plaintiffs agreed to assist Leavitt and Riggs with the development and did so by introducing them to a realtor, a consultant, and providing advice and guidance. Compl. ¶ 14. Plaintiffs allege that "[d]ue to the variables involved in the project, the fee for Plaintiffs' services was left open, but the parties involved agreed it would be reasonable once the final costs of the project were tallied." Compl. ¶ 15. Plaintiffs then began performing pursuant to the consulting arrangement. By this point, Plaintiffs allegedly had already identified the Bayside Marketplace location, so the bulk of the consulting services was performed from New Jersey through telephone calls, email, and text messages. Compl. ¶ 24; Catanoso Decl. ¶ 5; DECLARATION OF JOHN F. PALLADINO, ESQ. ¶ 2 [Dkt. 28-1] ("Palladino Decl."). Riggs, as representative of Leavitt and Skyviews, was in regular contact with Plaintiffs in New Jersey to discuss the project. Catanoso Decl. ¶ 6; Palladino Decl. ¶ 3.

To finalize terms of the agreement, on March 28, 2021 Palladino sent an email from New Jersey to Leavitt stating:

> Guy, this email confirms that you've agreed to pay our group a total of $400,000 over four years in equal yearly installments for our past consulting services on the Miami Wheel. The initial payment will be made on August 15, 2021 with the 3 subsequent payments made on the same date each year through 2024. Please confirm I have correctly set forth our understanding, John.
>
> John F. Palladino, Esq.
> Hankin Sandman Palladino Weintrob & Bell
> 30 S. New York Avenue
> Atlantic City, NJ 08401

Compl. ¶ 18. Leavitt responded agreeing to pay Plaintiffs $400,000 in installments over four years upon completion of the Skywheel project:

> Hi John,
> I apologize for not responding sooner. I found your email in my spam folder. As you can guess our IT department has us pretty locked down when it comes to spam. . . . I have some concerns as to making a full payment in August as you are stating. Sorry to say but it was not my understanding on our call that we could cover $100k for the first payment. I can make 50,000 in August and $50,000 in December. Would that be acceptable? We can make up a document to that effect if agreeable with you. Thank you for your considerations.

Compl. ¶ 19. Palladino purportedly accepted the offer on behalf of Plaintiffs, stating: "That works. Please send a draft agreement." Compl. ¶ 20. Plaintiffs claim that although Leavitt never sent the draft agreement, he manifested his assent by making the $100,000 payment in 2021 pursuant to the terms of the agreement. Compl. ¶ 21.

According to Plaintiffs, Leavitt breached the agreement upon failing to make the subsequent payment in 2022 and repudiated the obligation to pay the remaining $300,000. Compl. ¶ 22. Plaintiffs allege that the Skywheel was developed by, and is owned and/or operated by Leavitt's business entities, Skyviews of America, LLC, Skyviews Miami, LLC, and John Does 1-10, which were the intended third-party beneficiaries of the services provided by Plaintiffs pursuant to the agreement and, as such, are liable to Plaintiffs to the same extent as Leavitt. Compl. ¶ 23.

Defendants now move to dismiss Plaintiffs' Complaint for lack of personal jurisdiction and improper venue, or alternatively, to transfer the case to the Southern District of Florida. In support, Defendants argue that neither Leavitt nor the Skyview entities are citizens of New Jersey and that the dispute arose in Florida where the Skywheel, related documents, and witnesses are located and where Plaintiffs performed certain consulting services. In response, Plaintiffs contend that Defendants have sufficient minimum contacts with New Jersey and transfer is unwarranted because New Jersey is the forum where Plaintiffs met with Riggs, negotiated the agreement, formed the agreement, performed most of their consulting services under the agreement, received partial payment pursuant to the agreement, and suffered breach of the agreement.

## II.   Discussion

### a.  Specific Jurisdiction

A party may move for dismissal of an action for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). *Salovaara v. Jackson Nat'l Life Ins. Co.*, 246 F.3d 289, 300 (3d Cir. 2001). A federal court may exert personal jurisdiction to the extent authorized by the law of the state in which that court sits. *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). The New Jersey Long–Arm Statute permits the exercise of jurisdiction to the fullest extent allowed by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Nicholas v. Saul Stone & Co. LLC*, 224 F.3d 179, 184 (3d Cir. 2000); N.J. Ct. R. 4:4–4. Due process limits a state's power to assert personal jurisdiction over a nonresident defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14,

104 S.Ct. 1868, 80 L.Ed.2d 404 (1984) (citing *Pennoyer v. Neff*, 95 U.S. 714, 24 L.Ed. 565 (1878)).

Due process is satisfied when a defendant has certain minimum contacts with a forum state such that a court's jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (citation omitted) (internal quotation marks omitted). The existence of minimum contacts provides "fair warning" to a defendant that he or she may be subject to suit in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment)). "A nexus between the defendant, the forum and the litigation is the essential foundation" of personal jurisdiction. *General Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). These basic due process principles are reflected in the two primary forms of personal jurisdiction: general and specific.

In the matter *sub judice*, Plaintiffs do not dispute that the Court lacks general personal jurisdiction over Defendants, but the parties disagree as to whether specific personal jurisdiction may be asserted. Accordingly, the Court's jurisdictional analysis focuses on specific jurisdiction. *See Pennzoil Prods. Co. v. Colelli & Associates, Inc.*, 149 F.3d 197, 200–01 (3d Cir. 1998) ("[N]o party in this case contends that there is a basis for general jurisdiction in Pennsylvania—so we are free to consider solely whether the alternative form of personal jurisdiction is present: specific personal jurisdiction.").

Specific jurisdiction arises from "an affiliation between the forum and the underlying controversy," and a district court exercising specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that

6

establishes jurisdiction." *Bristol–Myers Squibb Co. v. Super. Ct. of Cal.*, 582, U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011*)); see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021). Specific jurisdiction exists over out-of-state defendants "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (internal citations omitted). Only forum contacts specifically related to the cause of action support the exercise of specific jurisdiction. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 107-08 (3d Cir. 2004) (While forum contacts "that might otherwise prove jurisdictionally insufficient under a specific jurisdiction analysis may appear more convincing when swaddled in the more extensive, yet unrelated, forum contacts of a foreign defendant, ... [e]mphasizing contacts unrelated to the asserted causes of action blurs the fundamental distinction between specific and general jurisdiction.").

In the context of contract-based claims, courts "consider the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing." *Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001) (citing *Mellon Bank (E.) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992); *B&C Luxury Auto, Ltd. v. Intex Cargo, Inc.*, No. CV2203229, 2023 WL 2554682, at *3 (D.N.J. Mar. 17, 2023). This includes inquiring into "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Gen. Elec. Co.*, 270 F.3d at 150. "Traveling to the forum to consult with the other party can constitute purposeful availment,

regardless of who solicited the contact." *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006) (citing *Carteret Sav. Bank, FA v. Shushan*, 954 F.2d 141,150 (3d Cir. 1992)). However, if the parties establish a long-term relationship, "actual territorial presence becomes less determinative." *Id.* (citing *Gen. Elec. Co.*, 270 F.3d at 151).

In addition to the purposeful availment and relationship requirements, the exercise of personal jurisdiction must "comport with 'fair play and substantial justice.'" *Burger King*, 471 at 476 (quoting *Int'l Shoe Co.*, 326 U.S. at 319, 66 S. Ct. at 160, 90 L. Ed. 95 (1945)). To address this fairness question, courts may consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Miller*, 384 F.3d at 97 (quoting *Burger King*, 471 U.S. at 477).

To survive a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing the court's personal jurisdiction. *Id.* (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002)). In deciding such a motion, a court is "required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (quoting *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003)).

Taking Plaintiffs' allegations as true and drawing all inferences in Plaintiffs' favor, the Court finds that Defendants' suit-related contacts with New Jersey are sufficient to establish specific jurisdiction. At the genesis of the parties' business engagement was Catanoso's meeting in Atlantic City with Riggs, whom Plaintiffs claim held himself out as a representative and agent of Defendants. Catanoso Decl. ¶ 2; *see*

8

*Telcordia Tech Inc.*, 458 F.3d at 177 ("Traveling to the forum to consult with the other party can constitute purposeful availment, regardless of who solicited the contact."); *Walden v. Fiore*, 571 U.S. 277, 285, 134 S. Ct. 1115, 1122, 188 L. Ed. 2d 12 (2014) ("physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact."); *Gen. Elec. Co.*, 270 F.3d at 150 ("Actual presence during pre-contractual negotiations . . . is generally factored into the jurisdictional determination."). The parties then negotiated terms and agreed that the fee for Plaintiffs' services would be "left open . . . but [the fee] would be reasonable once the final costs of the project were tallied." Compl. ¶ 15; Opp. at *5. Riggs regularly communicated with Plaintiffs in New Jersey as the project developed. Catanoso Decl. ¶ 6; Palladino Decl. ¶ 3. These communications, along with certain consulting work performed by Plaintiffs in New Jersey, ostensibly culminated in Leavitt's agreement to pay Plaintiffs $400,000 over four years upon completion of the Skywheel project. Compl. ¶ 17. Leavitt purportedly accepted these terms in response to an email from Palladino and subsequently made payment of $100,000 to Plaintiffs in 2021. *Id.* ¶¶ 19-21. Plaintiffs contend that Leavitt knew Plaintiffs' home office was in New Jersey because Palladino's emails identified his Atlantic City office address. Opp. at *13 (citing Compl., Exhibit A); *see On-Time Staffing, LLC v. Flexible Staffing Sols., Inc.*, No. CIV. 06-3951, 2007 WL 1234978, at *4 (D.N.J. Apr. 25, 2007) (finding specific jurisdiction where "Defendant knew it negotiated with an entity located in New Jersey."). In addition to alleging that the agreement was formed in New Jersey (Compl. ¶ 24), Plaintiffs assert that the payment of $100,000 was delivered to Plaintiffs in New Jersey. Compl. ¶¶ 21, 24; *Remick*, 238 F.3d at 256 (noting that defendant's payment made to plaintiff in the forum state counted towards minimum contacts in judging the

9

propriety of the court's jurisdiction). Plaintiffs also allege that Leavitt then failed to make further payment and has repudiated the obligation to pay the remaining $300,000. Compl. ¶ 22; *see Telcordia Tech Inc.*, 458 F.3d at 178 (finding specific jurisdiction was proper in part because "the breach of contract . . . occurred when payment was not placed in a New Jersey bank pursuant to the parties' course of dealings"). In sum, Plaintiffs have alleged facts that the parties' business relationship was initiated and their and agreement was formed in New Jersey where its terms and resulting exchanges were carried out and where the breach occurred. Considering "the totality of the circumstances, including the location and character of the contract negotiations, the terms of the contract, and the parties' actual course of dealing[,]" the Court finds that Defendants maintained the requisite minimum contacts with New Jersey to support specific jurisdiction. *Remick*, 238 F.3d at 256.

The Court must next determine whether Plaintiffs' claims arise out of or relate to the contacts discussed above. In evaluating this "relatedness" requirement with regard to a contract claim, "'courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach.'" *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 320 (3d Cir.2007) (quoting *Gen. Elec. Co.*, 270 F.3d at 150). As discussed, Plaintiffs have alleged facts that Defendants' contacts with New Jersey contributed in large measure to the formation of the parties' agreement and that the agreement was breached in New Jersey by virtue of Defendants' failure to make further payment and their repudiation. From these circumstances it can be reasonably inferred that Defendants' contacts were "instrumental" in the formation and breach of the parties' purported agreement, thus satisfying the "relatedness"

10

requirement. *See Maximum Quality Foods, Inc. v. Joseph DiMaria*, No. CIV.A. 14-6546, 2015 WL 1865754, at *7 (D.N.J. Apr. 20, 2015).

Having found that Defendants maintained sufficient minimum contacts with New Jersey to support the exercise of personal jurisdiction, the Court must analyze whether the exercise of personal jurisdiction in this case would be consonant with "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987) (requiring minimum contacts and fairness in order to assert personal jurisdiction). A nonresident defendant who has been found to have minimum contacts with the forum "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

Defendants argue that because they are Arizona and Florida residents and the agreement concerns services performed in locating a site for the operation of a Skywheel in Florida where relevant witnesses and documents are located,[1] any travel to New Jersey would impose a significant burden on Defendants. Opp. at *10. However, the Court does not find that these facts present a "compelling case" that jurisdiction is unreasonable. *Burger King*, 471 U.S. at 477. Although it places a comparatively greater burden on Defendants to litigate this matter in New Jersey instead of in their respective states, Defendants have not shown that they will be unable to present evidence in New Jersey that might be available in Arizona or Florida. *See Touzot v. ROM Dev. Corp.*, No.

---

[1] Defendants claim that "[a]ll of the relevant witnesses besides Plaintiffs themselves are located in Arizona or Florida." Br. in Supp. at *10. Defendants appear to be referring to Guy Leavitt, Charlene Leavitt, James Riggs, a Florida realtor, a Florida consultant, and several landlord and landlord employee witnesses.

CV 15-6289, 2015 WL 6082123, at *7 (D.N.J. Oct. 15, 2015) (finding there was no

"compelling case" that jurisdiction was unreasonable where defendant had not shown

that it would be unable to present evidence in New Jersey that was located in Rhode

Island). Under the circumstances where Plaintiffs have alleged that the parties' business

relationship and agreement were formed in New Jersey where Defendants also delivered

payment then failed to deliver further payment, it is entirely consistent with traditional

notions of fair play and substantial justice that Defendants would be expected to litigate

this matter in the forum. Further, "New Jersey has a decided interest in protecting

residents from breaches of contract and subsequent economic harm," and "Plaintiff[s]

have a substantial interest in obtaining relief in New Jersey, given that Plaintiff[s] feel

the effects of any breach here." *Coni-Seal, Inc. v. O'Reilly Auto., Inc.*, No. CIV. 12-

04568, 2013 WL 149611, at *8 (D.N.J. Jan. 14, 2013); *see also Touzot*, 2015 WL

6082123, at *7 ("New Jersey has a clear interest in adjudicating this dispute in that it

involves one of its citizens and his ability to collect alleged monies owed[.]"). "This is

especially so where, as here, the contracts were 'partly negotiated and performed in New

Jersey.'" *Id.* (quoting *Bachmann Software & Servs. v. Intouch Grp., Inc.*, No. CIV.A.08-

2025, 2008 WL 2875680, at *12 (D.N.J. July 22, 2008)).

### b. Venue

Pursuant to 28 U.S.C. § 1391 (b), venue is proper when:

(1) a judicial district in which any defendant resides, if all defendants reside
in the same State in which the district is located;
(2) a judicial district in which a substantial part of the events or omissions
giving rise to the claim occurred, or a substantial part of property that is the
subject of the action is situated; or

> (3) if there is no district in which an action may otherwise be brought as
> provided in this section, any judicial district in which any defendant is
> subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391 (b). In the Third Circuit, "the defendants bear the burden of showing

improper venue." *Bockman v. First Am. Marketing Corp.*, 459 F. App'x. 157, 160 (3d

Cir. 2012) (quoting *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982)).

    For purposes of determining proper venue, a corporate defendant resides "in any

judicial district in which such defendant is subject to the court's personal jurisdiction

with respect to the civil action in question[.]" 28 U.S.C. § 1391 (c)(2). Accordingly, venue

is proper in the District of New Jersey as to SA and SM because, for the reasons

addressed *infra*, they are subject to the Court's personal jurisdiction. Venue is also

proper as to Leavitt because Plaintiffs have alleged facts that a substantial part of the

events and omissions giving rise to Plaintiffs' claims occurred in this District. *See* 28

U.S.C. § 1391 (b)(2).  In the Third Circuit, the test to determine whether an event or

omission arose in a particular district focuses on "the location of those events or

omissions giving rise to the claim." *Cottman Transmission Systems, Inc. v. Martino*, 36

F.3d 291, 294 (3d Cir. 1994) (quoting *Setco Enterprises Corp. v. Robbins*, 19 F.3d 1278,

1281 (8th Cir. 1994)). To determine whether these events or omissions are substantial "it

is necessary to look at the nature of the dispute." *Id.* at 295. As discussed, Plaintiffs have

alleged facts that the parties' business relationship was initiated and their and

agreement was formed in New Jersey where its terms and resulting exchanges were

carried out and where the breach occurred by virtue of Defendants' failure to deliver to

Plaintiffs the additional monies owed. Based on these allegations, the Court finds that

Plaintiffs have asserted facts that substantial events or omissions underlying the dispute

occurred in New Jersey, and venue is proper here.

      c.     **Transfer**

28 U.S.C. § 1404(a) permits transfer to a more convenient forum "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The moving party bears the burden of establishing that the transfer is appropriate and must demonstrate that the alternate forum is more convenient than the present forum. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). "The Court has broad discretion in making determinations under Section 1404(a), and convenience and fairness are considered on a case-by-case basis." *Santi v. Nat'l Bus.Records Mgmt., LLC*, 722 F.Supp.2d 602, 606 (D.N.J. 2010). "While there is no definitive formula or list of the factors to consider" in determining the propriety of transfer, the Third Circuit has articulated certain "public" and "private" interests implicated by § 1404(a). *Windt v. Qwest Commc'n Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) ("the Supreme Court has prescribed a balancing of private interest factors affecting the convenience of the litigants and public interest factors affecting the convenience of the forum.").

Private interest factors a court should consider include: (1) plaintiff's forum preference as manifested in the original choice; (2) the defendant's preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses-but only to extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum). *Schering Corp. v. First Databank, Inc.*, 479 F. Supp. 2d 468 (D.N.J. 2007).

Public interest factors to consider when deciding whether to transfer venue for the convenience of parties and witnesses, in the interest of justice, include (1) enforceability of a judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding a local controversy, public policies of the fora; and, (5) familiarity of the district court with applicable state law. *Catanese v. Unilever*, 774 F. Supp. 2d 684 (D.N.J. 2011).

Here, the private interests of the parties do not favor transfer. For domestic plaintiffs, "[i]t is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice should not be lightly disturbed." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Windt*, 529 F.3d at 190 ("a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum, and this presumption may be overcome only when the balance of the public and private interests clearly favors an alternate forum"). The other factors do not shift the balance against Plaintiffs' choice of forum. Although Plaintiffs performed certain services and purportedly used a realtor and consultant in Florida where the Skywheel is located, Plaintiffs have alleged facts that the parties' business relationship and consulting agreement were formed in New Jersey where Plaintiffs performed most of their services and where Defendants rendered partial payment. Additionally, Defendants have not asserted any financial impediments, nor have they demonstrated that witnesses or evidence will be unavailable to this Court. *See Yocham v. Novartis Pharm. Corp.*, 565 F.Supp.2d 554, 558 (D.N.J.2008); *Santi*, 722 F. Supp. 2d at 608 (finding convenience of the witnesses is a neutral factor where

"none of the parties have asserted that any witness would be unavailable in either forum and it appears that the inconvenience to the parties and witnesses involved is relatively even."). Regarding the location of evidence, Plaintiffs assert that both parties maintain their respective books and records in their home states, and Plaintiffs have already supplied Defendants with "all 1,343 pages of documents they possess related to their consulting services at issue in this suit." Palladino Decl. ¶ 6; Opp. at *19. "[W]hen documents can be transported and/or easily photocopied, their location is entitled to little weight." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003). In view of these circumstances, Defendants' argument that they will be inconvenienced by litigating in this Court does not overcome the deference given to Plaintiff's choice of forum. "A court should not grant a transfer simply because the transferee court is more convenient for the defendants and therefore if the transfer would merely switch the inconvenience from defendant to plaintiff, the transfer should not be allowed." *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F. Supp. 2d 747, 749 (E.D. Pa. 1998) (citing *Mkt. Transition Facility of New Jersey v. Twena*, 941 F. Supp. 462, 467 (D.N.J. 1996).

The public interest factors similarly do not warrant transfer. While the enforcement of a judgment against Defendants may be more straightforward in Arizona and Florida as their home districts, this factor does not weigh heavily in favor of transfer. A judgment in any federal court can be enforced through appropriate procedures in other forums and Defendants have not shown that it would be difficult to enforce a judgment entered by the District of New Jersey. Further, the likelihood that parties, documents, and witnesses will have to be transported from one forum to another regardless of where this case is litigated means that "practical considerations

that could make the trial easy, expeditious, or inexpensive" do not favor either forum. *Jumara*, 55 F.3d at 879; *Yocham*, 565 F. Supp. 2d at 559.

Although Florida has ties to the facts at issue in this case, the ties to New Jersey appear stronger. Plaintiffs performed certain services and used a realtor and consultant in Florida where the Skywheel is located, and Defendants assert a defense which they claim implicates Florida's interest in safeguarding its real estate professional licensure scheme. These considerations are insufficient, however, to subordinate Plaintiffs' interest in adjudicating the matter in their choice forum given the allegations that the parties' business relationship and consulting agreement were formed in New Jersey where Plaintiffs performed most of their services and where Defendants rendered partial payment. Indeed, this is not a case in which Plaintiffs have chosen a forum with little or no apparent connection to the facts at issue in the case.

As to the familiarity of the Court with the applicable state law, Defendants argue that applicable state law issues favor transfer to Florida because "a primary defense in this action will be the fact that Plaintiffs are seeking to enforce an illegal contract, under which they purport to have performed real estate services in Florida for which they lack the requisite licensure." Br. in Supp. at *15-16. The Court recognizes that Florida may have a local interest in regulating wrongdoing by individuals performing illegal real estate services in Florida similar to New Jersey's local interest in protecting its citizens from financial harm. At its core, however, this case is not about the specific location of the Skywheel or protecting the integrity of Florida's real estate licensure scheme as Defendants seem to suggest. Rather, this case centers around the alleged breach of a contract, which Plaintiffs have alleged was formed in New Jersey and is governed by

17

New Jersey law. Even assuming Florida law applies to Plaintiffs' causes of action, the Court does not believe that this warrants disturbing Plaintiffs' forum preference. Federal district courts are often called upon to interpret the laws of jurisdictions outside of the states they sit, and this Court is capable of ruling on common-law breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment claims. Moreover, Defendants have not asserted that relevant legal principles (i.e., the law governing contract and quasi-contractual/equitable principles) differs significantly between New Jersey and Florida.

## III.    Conclusion

For the reasons set forth herein, the Court will deny Defendants' motion to dismiss for lack of personal jurisdiction and improper venue as well as Defendants' alternative request to transfer this action to the United States District Court for the Southern District of Florida.

September 28, 2023

s/ Joseph H. Rodriguez
Hon. Joseph H. Rodriguez,  U.S.D.J.